United States District Court
Southern District of Texas
**ENTERED**
March 06, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOODY NATIONAL CI | § | |
| GRAPEVINE S., L.P., *et al.*, | § | |
|     Plaintiffs,[1] | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-0711 |
| | § | |
| TIC TEXAS TWO 23, L.L.C., *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Carol Chua-Vigue's Motion for

Summary Judgment [Doc. # 70], to which Plaintiffs[1] filed a Response [Doc. # 88].

Also pending is Defendants'[2] Motion for No-Evidence Summary Judgment [Doc.

# 71], to which Plaintiffs filed a Response [Doc. # 90]; Motion for Partial Summary

Judgment Regarding Interpretation of Purported Mutual Release Agreement [Doc.

# 74], to which Plaintiffs filed a Response [Doc. # 97]; and Defendants' Motion for

---

[1]     Plaintiffs are Moody National CI Grapevine S, L.P.; Moody National Medical Center S, L.P.; Moody National Medical Center MT, L.P.; Moody National Realty Company, L.P.; Moody National Mortgage Corporation; Moody National Texas Two Hotel DST Management, LLC; Brett C. Moody; Moody Management Corporation; Moody National Management, L.P.; MNGP Medical Center MT, LLC; MNGP CI Grapevine MT, LLC; Moody National CI Grapevine MT, L.P.; MNGP CI Grapevine S, LLC; Moody Realty Corporation; and MNGP Medical Center S, LLC.

[2]     Defendants are TIC Texas Two 21, L.L.C. ("TIC 21"); TIC Texas Two 22, L.L.C. ("TIC 22"); James D. Vigue; Carol Chua-Vigue; TIC Texas Two 23, L.L.C. ("TIC 23"); David A. Hardenbrook; TIC Texas Two 27 L.L.C. ("TIC 27"); and Pamela J. Maas.

Summary Judgment Regarding Fraud in the Factum and Unenforceability of the Purported Mutual Release Document [Doc. # 76], to which Plaintiffs filed a Response [Doc. # 98].[3]  Defendants filed a consolidated Reply [Doc. # 105], addressing all four of these pending motions.  Having reviewed the full record and the applicable legal authorities, the Court **denies** the four motions.

## I.  <u>BACKGROUND</u>

Plaintiffs allege that in the Fall of 2006, Plaintiff Moody National CI Grapevine S, L.P. ("Moody S") issued a confidential placement memorandum regarding two hotel properties -- a Residence Inn in Houston and a Comfort Suites in Grapevine, Texas (the "Project").  In connection with the Project, Plaintiffs Moody S, Moody National Medical Center S, L.P., Moody National Medical Center MT, L.P., Moody National Texas Two H, L.P., and Moody National CI Grapevine MT, L.P. signed contracts containing broad arbitration provisions.  In August 2010, the Project's original tenants-in-common structure was converted to a Delaware Statutory Trust ("DST").

---

[3]     Also pending are Defendants' Traditional Motion for Summary Judgment on Plaintiffs' Fiduciary Duty [Doc. # 69], Plaintiffs' Motion for Summary Judgment [Doc. # 77], Plaintiffs' Motion to Strike and for Summary Judgment on Defendants' Affirmative Defenses [Doc. # 79], and Plaintiffs' Motion to Dismiss or for Summary Judgment on Defendants' Counterclaim [Doc. # 110].  These motions will be addressed in a separate Memorandum and Order.

Plaintiffs allege that there were continuing revenue problems with the Project. During an Investor Conference Call on November 19, 2015, the investors were informed that Marriott had advised that it would not renew the franchise for the Residence Inn when it expired in December 2015. *See* Investor Conference Call Summary [Doc. # 77-9], § 2. Based on a Moody affiliate's agreement to build a new Residence Inn in the Houston Medical Center area, Marriott agreed to extend the franchise until December 2016. *See id.* In connection with discussions during the conference call about marketing the Residence Inn, Moody and his affiliates expressed that they "would not purchase the portfolio as there could be potential conflicts of interest." *See id.*, § 4. Nonetheless, when the highest combined offer for the two hotel properties was $13.57 million, Moody offered to purchase the properties for $14 million, but required a release from all parties. *See* June 2016 Email from Investor Services [Doc. # 77-18]. A "sentiment ballot" was sent to the investors seeking their "preference" regarding how to proceed. *See id.* Option 1 was to sell to the non-related party for $13.57 million, Option 2 was to sell to the Moody-related party for $14 million, and Option 3 was to wait until closer to the loan maturity date in December 2016. *See id.* Defendants TIC 22, TIC 23, and TIC 27 each selected Option 2 - the sale to the Moody-related party. *See* Sentiment Ballots [Doc. # 77-19].

Eventually, the Project was sold to MN TX II, LLC ("MN TX"), an affiliate of the DST's trustee.

In connection with the potential sale, certain Plaintiffs and certain Defendants[4] signed a Mutual Release by which they released all claims and actions relating to the Project.  *See* Mutual Release [Doc. # 28], Exh. A to Second Amended Complaint, § 1.1.[5]  In the Mutual Release, each "Releasing Party and each of its Affiliates" agrees that it will never institute a lawsuit or arbitration proceeding "against any of the Released Parties . . .."  *See* Mutual Release, § 1.6.  Additionally, the Mutual Release provides that it "may be used as the basis for enjoining any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement, except for an action based on a breach of this Agreement."  *Id.*, § 9.  The Mutual Release states that it "contains the entire agreement and understanding with respect to the compromise of the Released Matters and the Claims."  *Id.*, § 4.

On February 1, 2019, Defendants instituted an arbitration proceeding against Plaintiffs with the American Arbitration Association.  Defendants allege in the arbitration that Brett C. Moody through his affiliated companies misrepresented the Project and used it for his personal benefit.  *See* First Amended Original Demand for

---

[4]     Plaintiffs allege that all Defendants except TIC 21 signed the Mutual Release.

[5]     On January 24, 2020, after Defendants filed the four pending motions, Plaintiffs filed their Third Amended Complaint [Doc. # 85].

Arbitration and Statement of Claims in Arbitration [Doc. # 29], Exh. B to Second Amended Complaint.  Although it is undisputed that one of the parties that filed the arbitration proceeding did not sign the Mutual Release, the arbitrator stayed the arbitration proceeding.

On February 27, 2019, Plaintiffs filed this lawsuit, asserting the Mutual Release as a basis to enjoin the arbitration proceeding.  Plaintiffs also assert breach of contract claims based on the Mutual Release.  The Court determined that the validity of the Mutual Release is a threshold issue.  Defendants challenge the validity and the enforceability of the Mutual Release on a variety of grounds.

Following discovery on the validity of the Mutual Release, Defendants filed the four pending motions for summary judgment.  The motions have been fully briefed, and they are now ripe for decision.

## II.   STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions in the record, together with any affidavits filed in support of the motion, demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a); *Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 434 (5th Cir. 2016).  The moving party bears the burden of demonstrating that there is no evidence to

support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *See Guar. Bank & Trust Co. v. Agrex, Inc.*, 820 F.3d 790, 794 (5th Cir. 2016).

## III.   CAROL CHUA-VIGUE'S MOTION FOR SUMMARY JUDGMENT

Chua-Vigue signed the Mutual Release individually and as "Trustee for the Vigue 2002 Family Trust" on behalf of TIC 22. She has moved for summary judgment, asserting that she had no involvement in TIC 22 or in its filing of the arbitration proceeding.

The arbitration proceeding was filed on February 1, 2019. Chua-Vigue has presented her deposition testimony that she does not, and has not in the past, had any "control" over TIC 22. *See* Chua-Vigue's Motion, pp. 6-7. She has also presented a Texas Franchise Tax Public Information Report from 2011 in which neither Chua-Vigue nor the Vigue 2002 Family Trust is listed as an officer, director, or member of TIC 22. *See* Chua-Vigue's Motion, Exh. 19. Plaintiffs, on the other hand, have

presented a Termination of Registration filed with the Texas Secretary of State on February 21, 2017, on which Chua-Vigue signed as an "authorized person" for TIC 22, and as Trustee for the Vigue 2002 Family Trust. *See* Exh. 4 to Plaintiffs' Reply in Support of Their Motion for Summary Judgment [Doc. # 104-4].

Neither party has presented direct evidence regarding whether Chua-Vigue was a "principal and/or owner" of TIC 22 when she signed the Mutual Release in October 2016 and when the arbitration proceeding was filed in February 2019. The evidence presented by the parties is conflicting and raises a genuine issue of material fact that precludes summary judgment. Chua-Vigue's motion is denied.

## IV.   <u>MOTION FOR NO-EVIDENCE SUMMARY JUDGMENT</u>

Defendants argue that they are entitled to summary judgment because (1) a mere challenge to the validity of the Mutual Release is not a breach of that agreement; (2) the indemnity provision is unenforceable because it is not conspicuous; and (3) Plaintiffs have failed to establish the legal basis for injunctive relief. Because Defendants' Motion for No-Evidence Summary Judgment is unsupported, both legally and factually, it is denied.

### A.   <u>Mere Challenge to Validity of Mutual Release</u>

Defendants argue that their mere challenge to the validity of the Mutual Release does not, as a matter of law, constitute a breach of that agreement. This lawsuit does

not, however, involve Defendants' mere challenge to the validity of the Mutual Release. Plaintiffs are not asserting a breach of contract claim based on Defendants' assertions that the Mutual Release is invalid. Instead, Plaintiffs' breach of contract claim is based on Defendants having filed the arbitration proceeding, which was itself not a mere challenge to the validity of the Mutual Release. Indeed, Defendants admit that they filed the arbitration proceeding "against Plaintiffs based on Plaintiffs' conduct in the management and sale of the Project." *See* Motion [Doc. # 71], p. 5.

In the Reply, Defendants argue that "to the extent Plaintiffs' claimed attorney's fees relate solely to their litigation of events which were *not* actually breaches of the Release, Plaintiffs must segregate or forfeit those fees." Reply [Doc. # 105], p. 17 (emphasis in original). If Plaintiffs ultimately seek to recover attorney's fees to which they are not entitled, that issue will be addressed at the time any awardable fees are calculated. It is not a basis for summary judgment in Defendants' favor on the breach of contract claim.

### B.   Indemnity Provision

The Mutual Release contains the following Indemnification provision:

> Each Releasing Party and each of its Affiliates . . . agrees that, if such party, or Affiliate thereof, or any person or entity claiming through such party or Affiliate thereof hereafter commences, joins in, or in any manner seeks relief through any action arising out of, based upon, or relating to any of the Released Matters or the Claims (including, without limitation, future Claims) released hereunder, with respect to any Party released

from such claims under this Agreement, then such party will pay, in addition to any other damages caused thereby, all reasonable legal fees and expenses incurred by the released party in defending or otherwise responding to said action.

Mutual Release, § 2.  Defendants seek summary judgment on Plaintiffs' claim for attorneys' fees under this Indemnification section.  Defendants argue that the provision fails to satisfy the conspicuousness requirement under Texas law, citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

The Texas Supreme Court has clarified that its holding in *Dresser* is "explicitly limited to releases and indemnity clauses in which one party exculpates itself from its own future negligence." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997). In this case, the Mutual Release does not provide a release or indemnification of Plaintiffs for their own future negligence.  Instead, the Mutual Release indemnification provision applies to attorneys' fees incurred as a result of the Releasing Party's breach of the Mutual Release.  Therefore, the *Dresser* conspicuousness requirement does not apply, and Defendants are not entitled to summary judgment on Plaintiffs' claim under the Indemnification section of the Mutual Release.

Defendants argue also that there "can be no contribution or indemnity between two parties based on a direct claim between them."  *See* Reply [Doc. # 105], p. 19. Defendants cite *Equitable Recovery, L.P. v. Heath Ins. Brokers of Texas, L.P.*, 235

S.W.3d 376, 387 (Tex. App. -- Dallas 2007), and *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 959 (5th Cir. 1984).  In addition to asserting a new argument not presented in the Motion, Defendants rely on inapposite cases.  The *Equitable* case involved common law indemnity, and *Weathersby* involved a general maritime indemnity provision.  Neither case supports Defendants' argument that the Indemnification section of the Mutual Release is unenforceable for failing to satisfy the *Dresser* conspicuousness requirement.  Defendants' request for summary judgment on the Indemnification provision is denied.

## C.  <u>Injunctive Relief</u>

Plaintiffs have requested a preliminary and permanent injunction preventing Defendants from proceeding with the arbitration.  The arbitrator has stayed the arbitration proceeding and, as a result, the request for a preliminary injunction currently is moot.

Defendants seek summary judgment dismissing Plaintiffs' request for a permanent injunction.  The party seeking a permanent injunction must establish "(1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).  Because the

permanent injunction issue arises only if Plaintiffs prevail in this case, the issue does not arise unless and until the Mutual Release is held to be valid and enforceable. Therefore, for purposes of Defendants' motion for summary judgment on Plaintiffs' request for a permanent injunction precluding the arbitration, the Court assumes, without in fact finding, that Plaintiffs have succeeded on the merits of the Mutual Release's validity.  Defendants argue that Plaintiffs cannot establish the remaining three elements.

Although the Fifth Circuit has not held that being required to arbitrate nonarbitrable issues constitutes irreparable harm, district courts in the Fifth Circuit have held that "[i]n light of Fifth Circuit precedent establishing that a court cannot compel a party to arbitrate unless the court determines that the party agreed to arbitrate," a party demonstrates irreparable harm if it shows that it "must arbitrate nonarbitrable disputes."  *See, e.g., Kellogg Brown & Root Servs., Inc. v. Altanmia Comm. Mktg. Co. W.L.L.*, 2007 WL 4190795, *16 (S.D. Tex. Nov. 21, 2007). Therefore, the Court finds that Defendants have not demonstrated as a matter of law that Plaintiffs cannot establish irreparable harm from the denial of the injunction.

If the Mutual Release is determined to be valid and enforceable, Defendants will suffer no harm from being required to comply with the terms of their contract. Stated differently, if the Mutual Release is enforceable, the Releasing Parties will

11

simply be held to their agreement not to pursue the arbitration, so enjoining the arbitration will not prejudice them.[6]  Therefore, the irreparable injury to Plaintiffs from denial of the injunction would outweigh any potential damage that the injunction would cause Defendants.

Regarding the public interest factor, Defendants argue that the public interest in judicial economy would be disserved by issuance of a permanent injunction because the signatory Plaintiffs must arbitrate with TIC 21, the party to the arbitration proceeding who did not sign the Mutual Release.  There would be no judicial economy issues presented by a permanent injunction issued by the Court in this case, because the injunction would preclude participation in an arbitration proceeding by those Defendants who signed the Mutual Release.  The injunction would preclude signatories to the Mutual Release from pursuing their claims in arbitration, and the ability of only non-signatory investors to pursue arbitration would remain unaffected by the injunction.  Therefore, the issuance of a permanent injunction would result in a single arbitration proceeding and would not cause "piecemeal" or duplicative litigation.

---

[6]     As noted above, the Court's ruling is dependent on the validity of the Mutual Release. Should the Mutual Release be held unenforceable, then it would not bar the arbitration proceeding and no injunction would be appropriate.

Moreover, the public interest favors requiring parties to a contract to honor their contractual obligations. *See, e.g., Sw. Elec. Power Co. v. Burlington N., Inc.*, 475 F. Supp. 510, 523 (E.D. Tex. 1979); *CompuCom Sys., Inc. v. WJ Glob., LLC*, 2014 WL 12531270, *2 (N.D. Tex. Oct. 23, 2014).  This public interest would be disserved if those Defendants who signed the Mutual Release were permitted to disregard their obligations under that agreement.

Defendants are not entitled to summary judgment on Plaintiffs' request for a permanent injunction.

## V.   MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING INTERPRETATION OF PURPORTED MUTUAL RELEASE AGREEMENT

Defendants argue that the Mutual Release is unenforceable because (1) they made false stipulations of fact, and (2) a waiver of contract interpretation rules is invalid.  Defendants argue also that the term "Released Matters" includes only sale-related claims.  Defendants' arguments are without merit, and their Motion for partial summary judgment on these issues is denied.

### A.   False Stipulations

In the Mutual Release, each party "expressly stipulates" that the Mutual Release "was the result of arms-length negotiations between sophisticated parties who were represented by counsel." *See* Mutual Release, § 6 <u>CONSTRUCTION</u>.  Based on these

stipulations, the parties agreed that the Mutual Release "shall be construed as though all of the Parties participated equally in the drafting of the same, and any rule of construction that a document is to be construed against the drafting party shall not be applicable to this Agreement." *Id.* The parties waived "the terms of any statute, rule or doctrine of common law which [] narrowly construes releases or covenants not to sue . . .." *Id.* Defendants argue that the provisions of § 6 are unenforceable because the stipulations ***they*** made therein were false.

Defendants cite no legal authority to support their argument that a party can be released from its contractual obligations based on that party's own false representations in the contract. Indeed, as a general rule, the party who enters into a contract based on false stipulations made by the other party has the option either to enforce the contract as written or to rescind the contract. *See, e.g., Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 238-39 (Tex. 1957); *Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App. -- Houston [1st Dist.] 2003, rev. denied); *Van Peterson Fine Jewelers v. ADT Sec. Servs., Inc.*, 2010 WL 11617965, *2 (N.D. Tex. Feb. 16, 2010).

In their Reply, Defendants rely on *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51 (Tex. 2008). That case, however, involved the enforceability of a waiver-of-reliance provision in a release that "disclaimed reliance 'upon any statement or any

representation of any agent of the parties' in executing the releases contained in the agreement." *Forest Oil*, 268 S.W.3d at 54.  Section 6 of the Mutual Release in this case relates to the parties' agreement regarding how the agreement should be construed; it is not a waiver-of-reliance provision.  Therefore, *Forest Oil* provides no legal support for Defendants' argument regarding the enforceability of § 6 of the Mutual Release.

### B.  <u>Waiver of Contract Interpretation Rules</u>

Defendants argue that rules of contract interpretation cannot, as a matter of law, be waived by agreement of the parties.  In support of this argument, Defendants incomprehensibly cite only a Fifth Circuit case holding that parties cannot waive federal subject matter jurisdiction.  *See* Motion [Doc. # 74], p. 10 (citing *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999)).  Defendants argue also that a waiver of the rules of contract interpretation violates public policy, citing only a Texas Supreme Court case that holds generally that "parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *See id.* (citing *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 117 (Tex. 2014)).  Defendants have cited no legal authority holding that parties are prohibited from agreeing that their contract, including a release, is to be construed in a particular manner.

To the contrary, Texas has a strong public policy favoring freedom of contract and, therefore, requires courts to respect and enforce the terms of the parties' contract as written. *See ConocoPhillips Co. v. Koopman*, 547 S.W.3d 858, 877 (Tex. 2018). Under Texas law, the rule construing contracts against the drafter is applied only where the parties' intention cannot otherwise be ascertained. *See Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676-77 (Tex. App. -- Austin 2003, no pet.). For a court to apply this doctrine, it must first determine that the disputed contract provisions are ambiguous, because the doctrine "is a device of last resort employed by courts when construing ambiguous contractual provisions." *Id*. at 676. "It is essentially a tie-breaking device used to prevent arbitrary decisions when all other methods of interpretation and construction prove unsatisfactory." *Id*. at 677.

Absent a legal or factual basis for this Court to hold as a matter of law that § 6 of the Mutual Release is unenforceable as against Texas public policy, Defendants' request for summary judgment on this issue is denied.

### C.     "Released Matters"

Defendants argue that the "Released Matters" in the Mutual Release are limited to claims relating to the sale of the Project. In the Mutual Release, the parties agree to a mutual release of all matters "with regard to the Released Matters or the facts underlying the Released Matters." *See* Mutual Release, § 1.1. "Released Matters" is

defined in the Mutual Release as "any and all claims, disputes, causes of action or controversies, arising under or in connection with the Project, including, ***without limitation***, any and all claims related to the acquisition of all or a portion of the Project by MN TX." *Id.*, RECITALS ¶ 8 (emphasis added). The "Project" is defined in the Mutual Release as "the Residence Inn Houston, located in Houston, Texas ('RI Houston') and the Comfort Suites Grapevine, located in Grapevine, Texas ("CI Grapevine")." *Id.*, RECITALS ¶ 1. Therefore, the term "Released Matters" in the Mutual Release includes any claims "arising under or in connection with" the two hotels.

Defendants make the tenuous argument that paragraph 2 of the Mutual Release "demonstrates that the 'RI Houston' and 'CI Grapevine' comprising the 'Project' refers to the real properties bearing those names -- not to the hotels built thereupon." Motion [Doc. # 74], p. 13. Defendants' argument is refuted by the clear language of the Mutual Release. Paragraph 2 recites that a Master Lease Agreement was entered into leasing CI Grapevine and RI Houston for the operation of the respective hotels. *See* Mutual Release, RECITALS ¶ 2. The reference in paragraph 2 to "the operation of" the hotels demonstrates clearly that the paragraph is not limited to only the real property.

Defendants argue also that the "Released Matters" cannot include the hotel franchises. Assuming, without finding, that the "Project" did not include the hotel franchises, the Mutual Release covers claims "arising under or in connection with the Project." *See id.*, § 1.1; RECITALS ¶ 8. Defendants have failed to demonstrate that claims regarding the hotel franchises are not claims "in connection with" the hotels.

In summary, the Mutual Release covers claims "with regard to the Released Matters *or the facts underlying the Released Matters*." *See id.*, § 1.1 (emphasis added). The "Released Matters" include, "*without limitation*," claims relating to MN TX's acquisition of the Project, which is defined as CI Grapevine and RI Houston. *See id.*, RECITALS ¶ 8 (emphasis added); *id.*, RECITALS ¶ 1. Defendants are not entitled to summary judgment that the "Released Matters" are, contrary to the clear language in the Mutual Release, limited to claims based on the sale of the hotel real property to MN TX. The Motion for Summary Judgment on these issues is denied.[7]

---

[7]     Defendants argue that the parties' course of dealing demonstrates that the "Released Matters" only included claims related to the sale of the real estate. *See* Motion [Doc. # 74], pp. 13-14. "When a contract is unambiguous, a court does not consider course of dealing." *See Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 313 n. 3 (Tex. 2005); *James L. Gang & Assocs., Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 437 (Tex. App. -- Dallas 2006, no pet.). Moreover, Defendants' evidence of course of dealing, even if admissible, does not establish the absence of a genuine issue of material fact that the parties' intended "Released Matters" to include only claims relating to the sale of the real estate.

## VI.    MOTION FOR SUMMARY JUDGMENT REGARDING FRAUD IN THE FACTUM AND UNENFORCEABILITY OF THE PURPORTED MUTUAL RELEASE DOCUMENT

Defendants seek summary judgment on their fraud in the factum claim and on the unenforceability of the Mutual Release.  Specifically, in this Motion, Defendants argue that the Mutual Release never became a binding contract because Plaintiffs altered it, and because some trust members did not sign the release.  Defendants argue also that the Mutual Release is void as the product of "fraud in the factum."  This Motion is denied.

### A.    Alleged Alteration of Mutual Release

Defendants argue that the Mutual Release is void because Plaintiffs "altered the terms of the agreement after Defendants signed it."  *See* Motion [Doc. # 76], p. 11. Defendants base this argument on the assertion that first, certain investors signed the Mutual Release that Plaintiffs sent to them, to which was attached a Schedule I listing all investor entities to whom the Mutual Release had been sent for signature, and then later, after the signatory Defendants signed and before Plaintiffs signed the Mutual Release, Plaintiffs replaced the original Schedule I (listing all investors) with a modified Schedule I that listed only those entities that actually signed the Mutual Release.  Defendants argue that this allegedly material "alteration" of Schedule I -- to delete from the original Schedule I the names of those investors who elected not to

sign the Mutual Release -- occurred before the Moody Parties signed the agreement and, therefore, renders the Mutual Release void and unenforceable.

Defendants' factual position is refuted by the record.[8]  The uncontroverted evidence in the record, submitted by Defendants, is that Plaintiffs' representative, Investor Services, received the executed signature page from those investor individuals and entities who chose to sign the Mutual Release.  *See* Plaintiffs' Response to Interrogatory No. 4 [Doc. # 76-1], p. 7.  "Following that, those executed signature pages would have been compiled into one document with the body and the schedule of the Unexecuted Mutual Release *along with the signatures of the 'Moody Parties*.'" *Id*. (emphasis added).  At that point, the Mutual Release had been signed by Plaintiffs and all signing Defendants.  "*Following that*, the representative who worked with Investor Services also updated the Schedule I that was attached to the Unexecuted Mutual Release to reflect those individuals and entities who executed the Unexecuted Mutual Release." *Id*. (emphasis added).  From this evidence, on which Defendants base their argument, it is clear that Plaintiffs and all signing Defendants had signed the Mutual Release before Schedule I was modified.  It is the Mutual

---

[8]     Additionally, Defendants have failed to demonstrate that the "alteration" to Schedule I was material as a matter of law.

Release to which the original Schedule I was attached that Plaintiffs seek to enforce against only those investors who signed it.

Defendants have failed to present evidence to support their argument that the Mutual Release was void because it was altered after Defendants signed it and before Plaintiffs signed it. Their Motion for Summary Judgment on this issue is denied.

### B.   Fraud in the Factum

Defendants argue that the Mutual Release is void under the doctrine of fraud in the factum because Plaintiffs sent them "a different mutual release agreement from the one they filed with this Court." *See* Motion [Doc. # 76], p. 14. This argument is based on the substitution of a Schedule I listing only those entities that actually signed the Mutual Release for the original Schedule I that listed all potential signatories.

"Fraud in the factum exists 'when a party signs a document without full knowledge of the character or essential terms of the instrument.'" *Resolution Tr. Corp. v. Leon*, 988 F.2d 1213 (5th Cir. 1993) (quoting *McLemore v. Landry*, 898 F.2d 996, 1002 (5th Cir. 1990)). "The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge." *Hidalgo v. Sur. Sav. & Loan Ass'n*, 502 S.W.2d 220, 224 (Tex. App. -- El Paso 1973, no pet.).

As discussed above, the Mutual Release on which Plaintiffs rely is the Mutual Release signed by Defendants and to which the original Schedule I was attached. The

record is uncontroverted that Defendants had a copy of the Mutual Release for several days during which they were free to review the document thoroughly and, if they chose, to discuss it with an attorney.  There is no evidence that Defendants lacked full knowledge of the character or essential terms of the Mutual Release, or lacked an opportunity to learn and understand those essential terms.  Defendants, therefore, are not entitled to summary judgment on their assertion of fraud in the factum.

## C.    Failure of Some Trust Members to Sign Release

Defendants argue that the signature of all members of the Delaware Statutory Trust was a condition precedent to the Mutual Release and, since only 22 of the 29 DST members signed the Mutual Release, it never became enforceable.  The language in the Mutual Release does not support Defendants' argument.

A condition precedent is either an act that must be performed or a certain event that must occur before a contractual duty arises.  *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010).  To determine whether a provision in a contract is a condition precedent, the Court ascertains the parties' intent by looking at the entire contract.  *See id.*; *Interstate Contracting Corp. v. City of Dallas, Tex.*, 407 F.3d 708, 727 (5th Cir. 2005) (citing *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990)).  "In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition

that', or some similar phrase of conditional language must normally be included."
*Criswell*, 792 S.W.2d at 948. "While there is no requirement that such phrases be
utilized, their absence is probative of the parties' intention that a promise be made,
rather than a condition imposed." *Id*. Conditions precedent are disfavored. *See Solar*,
327 S.W.3d at 108. When no conditional language is used and another reasonable
interpretation of the contract is possible, the provision will be construed as a covenant
and not a condition precedent. *Id*.; *Criswell*, 792 S.W.2d at 948.

Defendants argue that language in § 17 of the Mutual Release establishes a
condition precedent, requiring the signatures of all DST members in order for the
Mutual Release to become effective. Defendants argue also that use of the term
"Trust Member Parties" in the Mutual Release, such as in Recital ¶ 4 that Moody S
"transferred its undivided tenant-in-common interest in the Project to the Trust
Member Parties," necessarily means that all DST members were required to sign the
Mutual Release as a condition precedent for it to become effective. *See* Motion [Doc.
# 76], p. 16.

Section 17 reads, in its entirety:

IN WITNESS WHEREOF, each of the Parties has executed (or caused
to be executed, by a duly authorized signatory) this Agreement, dated as
of the date first set forth above and to be effective as of the Effective
Date, which shall be a date on which *all signatures hereto have been
confirmed received*, the Termination Agreement is effective and the
Restructuring is completed.

Mutual Release, § 17 (emphasis added).  Section 17 requires only that all actual signatures to the Mutual Release have been confirmed received; it does not state that the Effective Date is when all DST members have signed the Mutual Release.  None of the language on which Defendants rely contains terms such as 'if,' 'provided that,' 'on condition that,' or other conditional language.  "While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed."  *Criswell*, 792 S.W.2d at 948.

Moreover, other language in the Mutual Release indicates that the signature of every DST member is not a condition precedent.  The opening paragraph states that the Mutual Release is between Plaintiffs and "each of the *parties and signatories* listed on Schedule I . . .."  *See* Mutual Release, p. 1.  This language indicates that the Mutual Release is between "those who choose to sign the document," and modifies the phrase "Trust Member Parties" when appropriate to mean those who actually signed the release agreement.  *See, e.g., Imco Oil & Gas Co. v. Mitchell Energy Corp.*, 911 S.W.2d 916, 920 (Tex. App. -- Fort Worth 1995, no writ) (signature lines for all interest owners did not create condition precedent requiring all owners sign as condition precedent to validity of agreement).

The clearest indication of the parties' intent that signatures of all DST members was not a condition precedent is § 16.  That provision provides:

Each Party hereby represents and warrants that such Party has full power and authority to execute this Agreement and to perform its obligations hereunder, and that this Agreement has been duly authorized, executed and delivered by such Party and *is a valid and binding agreement with respect to such Party*.

Mutual Release, § 16 (emphasis added). This language, particularly in light of the absence of any conditional language in the Mutual Release, indicates that the parties intended that each party that signed the Mutual Release would be bound by its terms. As a result, Defendants are not entitled to summary judgment that the Mutual Release is invalid because it was not signed by all DST members.

## VII.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendant Carol Chua-Vigue's Motion for Summary Judgment [Doc. # 70], Defendants' Motion for No-Evidence Summary Judgment [Doc. # 71], Defendants' Motion for Partial Summary Judgment Regarding Interpretation of Purported Mutual Release Agreement [Doc. # 74], and Defendants' Motion for Summary Judgment Regarding Fraud in the Factum and Unenforceability of the Purported Mutual Release Document [Doc. # 76] are **DENIED**.

SIGNED at Houston, Texas, this **6th** day of **March, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\11-2019\0711DsMsSJ.wpd   200306.1320